Mason v. White.

---

## MASON *vs.* WHITE

After a sale of lands upon execution, by a sheriff, and the execution of a conveyance to the purchaser, extrinsic evidence can not be resorted to in order to establish the intent of the sheriff in making the sale. It is not like the case of a deed *inter partes;* and the rules applicable to such cases do not apply.

Deeds of bargain and sale between man and man may, to some extent, be explained, by showing the intent of the parties; and in some cases if the deed, by reason of fraud or mistake, fails to express the true intent, it may be reformed, and made to express such intent. But a deed of a sheriff can not thus be reformed. If it follows the notice and certificate of sale it can not be in any respect varied, for any reason, or made operative except according to its terms. The inquiry into the intent of the sheriff, must be restricted to the terms used, and to the intent which the language of the instrument expresses.

Extrinsic circumstances may be resorted to, to explain the terms used in a sheriff's deed, and to locate the premises described therein. But they can only be allowed for the purpose of establishing and carrying out the intent express-

ed in the deed, and not an intent which the terms of the deed fail to express.

If, in a deed, there are certain particulars once sufficiently ascertained, which designate the thing intended to be granted, the addition of a circumstance false or mistaken will not frustrate the grant. If there is a certain description of the premises conveyed, and a further description is added, it is immaterial whether the superadded description be true or false.

Where land is conveyed by a sheriff, upon a sale by him on execution, and two distinct parcels of land are found equally answering the description contained in the deed, the conveyance will be held inoperative, for the reason that it was intended to pass but one, and it can not be determined which was intended.

If a parcel of land exists in which the judgment debtor had an interest liable to levy and sale on execution, and which in every particular answers the description of the premises sold, no part which is necessary to a perfect description will be rejected as surplusage, so as to embrace a distinct or different parcel of land, to the exclusion of the one accurately described.

Where a deed, in describing the premises conveyed, bounds them on one side by lands mentioned as owned by another person—speaking in the present tense—when in fact there is, at the date of the deed, no land owned by such person, in that place, the land *recently* owned by him will be intended, and the deed should receive this construction *ut res magis valeat quam pereat.*

Nothing will pass at a sheriff's sale but what is then known and promulgated.

A sheriff's deed described the land intended to be conveyed as "bounded on the west by the highway leading from A. P.'s to the Erie canal, east by land occupied by J. B. and *south by land owned by P. F. W.*" The premises in dispute were once owned by P. F. W. but were not bounded on the south by any lands that were or ever had been owned by him. But directly north of, and adjoining the premises in dispute, was another parcel of land answering the description in the sheriff's deed in every respect, and in which the judgment debtor had, at the time, an interest in right of his wife, liable to be sold on execution. *Held,* 1. that the deed did not embrace the premises in dispute; but that it did include the parcel lying on the north.

2. That if the latter parcel was not included in the deed, then the deed was void for uncertainty.

3. That in the construction of the sheriff's deed every part of the description must be read and satisfied with reasonable certainty, and that no part of it could be rejected for its falsity.

THIS was an action to recover the possession of real estate. The complaint alledged that the plaintiff was the owner in fee of a part of lot No. 55 in Brutus, Cayuga county; and that while the plaintiff was the owner thereof the defendant entered

Mason v. White.

into the possession of the premises and ejected the plaintiff therefrom. The answer of the defendant specifically denied all the allegations of the complaint, and alledged that one Christopher Edee was the owner of the premises on or about the 3d day of May, 1842, and that on or about that time a judgment was obtained in the supreme court of this state in favor of John Bennett against Edee which became a lien upon the premises in question. That an execution was issued on said judgment to the sheriff of the county of Cayuga, by virtue of which said premises were, on the second day of December, 1842, sold by said sheriff at public auction. That Bennett became the purchaser on said sale, and assigned his certificate of sale to George Passage on the 29th day of August, 1848, to whom the sheriff of said county, on or about the sixth day of September, 1848, executed and delivered a deed of said premises. That the defendant entered into the possession of the premises under and by virtue of an agreement with Geo. Passage. That if the plaintiff had any claim of title it was derived from said Christopher Edee, and that the conveyance from Edee to the plaintiff or to those under whom he claimed was made to evade the operation of said judgment, of which the plaintiff had notice, and for the purpose of hindering, delaying and defrauding the creditors of Christopher Edee. The reply denied each and every allegation of new matter contained in the answer.

The cause was referred to a sole referee, for hearing and decision. On the trial before him John J. B. Rude was examined as a witness on the part of the plaintiff, and testified that he was acquainted with the premises mentioned and described in the complaint. That on the 19th day of March, A. D. 1849, and ever since then until three or four weeks previous to the trial, the defendant was in the possession of said premises. The counsel for the plaintiff then introduced in evidence the following deeds of conveyance, comprehending the premises mentioned in the complaint, to wit: 1st. A deed from Samuel Wilson and wife to Phineas F. Wilson, dated 25th of August, 1836, conveying eleven acres of land, including the premises in question. 2d. A deed from Phineas F. Wilson and wife to Christopher

Edee, dated December 30th, 1837, conveying three and $\frac{87}{100}$ths acres of land, including the premises in question. The above mentioned two deeds had not been recorded. 3d. A deed from Christopher Edee to Conrod Edee, dated September 10th, 1839, recorded September 27th, 1848, expressing a consideration of three hundred dollars, and conveying all the right and title of Christopher Edee in lot 55, Brutus. This deed covered the premises in question, and more besides. 4th. A deed from Conrod Edee to the plaintiff, dated October 2d, 1848, recorded October 5, 1848, conveying said premises in question. The consideration expressed in the last mentioned deed was $240. The foregoing deeds were all deeds in fee, with covenants of warranty. Said Rude further testified that he had known the premises thirty years; that when he first knew them they were woods. (It was here admitted that both parties claimed title under Christopher Edee.) That Christopher Edee took possession immediately after P. F. Wilson, and remained in possession until about one year ago or less.

The counsel for the plaintiff then offered to prove, by showing the declarations of Christopher Edee while in possession, the character of the possession of Edee, to wit; that he held it as tenant at will, under Conrod Edee. To which the counsel for the defendant objected. The objection was sustained by the referee, and the counsel for the plaintiff excepted to the decision. Witness testified that the value of the premises on the 2d day of April last, was $50 per acre. The counsel for the plaintiff here rested, and the counsel for the defendant first introduced in evidence an exemplified copy of a judgment recovered in the supreme court of this state in favor of John Bennett against Nicholas Piper and Christopher Edee for $277,93, signed May 3d, 1842. Filed May 9th, 1842, and then docketed. The suit in which said judgment was rendered, was on a promissory note, dated June 1st, 1826, payable in one year after date. Said counsel then · produced in evidence the original execution issued on said judgment, tested on the first Monday in July, 1842, and returnable on the third Monday in October then next, directed to the sheriff of the county of Cayuga, and which execution.

Mason *v.* White.

was indorsed with a direction to the sheriff to levy and collect $277,93 and interest thereon from May 9th, 1842, and his fees. Said execution had not been returned by said sheriff, nor any indorsement or note of a levy or return made thereon by him. John S. Everts was then called and examined as a witness on the part of the defendant, and testified that George H. Carr was sheriff of the county of Cayuga in 1842—that he was one of his deputies, and as such received the execution produced, and made a levy under it, on the premises in question, and advertised them for sale regularly, and sold them on the second day of December, A. D. 1842. John Bennett (the plaintiff) bid them off—that he, the witness gave to the purchaser and filed in the clerk's office of said county, a certificate of sale. Said certificate was then produced and read in evidence, and described the premises sold by the sheriff, as follows : "All that certain piece or tract of land situate, lying and being in the town of Brutus, and county of Cayuga, on lot number fifty-five, bounded on the west by the highway as leading from Anna Passage's to the Erie Canal, east by land occupied by Joshua Bishop, and south by land owned by P. F. Wilson ; containing about two acres of land, be the same more or less. Also one other piece of land situate, lying and being on lot number fifty-six, in said town, bounded on the east by the highway, north by Joshua Bishop's, and west and south by land owned by George Passage, and is the same place the said Edee now resides on, containing about a half an acre of land, be the same more or less." The counsel for the defendant then produced and read in evidence, an assignment of said certificate by said Bennett to George Passage, dated August 29th, 1848. Said Everts was then cross-examined by the counsel for the plaintiff, and testified as follows : " I went on the premises—can't say whether I took the descrip-·tion of the premises from a deed or not—think that I got the description from Joshua Bishop, but am not sure. The boundaries of the premises were the same in the advertisement of sale as in the certificate of sale. I can not tell where the land of P. F. Wilson is that is mentioned in the description of lands sold by me. I meant to sell all the lands that Christopher Edee

owned. Question. Do you know where the land spoken of as P. F. Wilson's land, in the certificate, is? Objected to by the defendant's counsel as immaterial, and objection overruled, and the defendant excepted. Answer. I can not say that I do. I know where the land of P. F. Wilson was at the time, for it was pointed out to me as I stood in the road that leads from the widow Passage's to the canal, on the height of ground near Bishop's where I could see the whole of it. Could see the whole premises on both sides of the road. I can not say which side of the road, whether north or south of it, the land lay which was pointed out to me as P. F. Wilson's. I have not read the complaint in this action, or heard it read. I have no certain knowledge that the premises described and claimed in the complaint, or any part of them, are included in the description of the premises mentioned in the certificate, but I always supposed they were. The plaintiff in the execution bid off the premises." Said witness further testified, that at the time of the sale he did not know who occupied the premises excepted in the complaint—thought there was a house on it occupied by Stephen Mead. That he had not read, heard read nor knew, the contents of the complaint in this action. The defendant's counsel then read the complaint to said witness and re-examined him, and he testified: "I went to see the premises when I had the execution, and stood in the road where I could see the whole of the premises. I have heard the description read in the complaint and those premises I sold." The counsel for the defendant then read to the witness the description of the premises in the certificate of sale, and after reading it asked the witness, "are the premises in this description and in the complaint the same premises?" After hearing both descriptions read, the witness answered they were the same premises. Said witness was then by the counsel for the plaintiff cross-examined again, who asked him the following questions, to wit: "Do you know where the lands mentioned in the complaint as occupied by David Passage are? Answer. They are on the south side of the road leading from Weedsport to Jordan. Question. Is any part of them on the north? Answer. He has none on the north side that I ever saw him

occupy. Question. Do you know where the land is situate, mentioned in the complaint, as being conveyed by George Passage to Margaret Edee? Answer. Before reflection I should think it was the land Christopher Edee lived on, but can not say without looking at the description. Question. Can you say on which side of the road running from Anna Passage's to the Erie canal it lies, on the east or on the west side? After examining the description, the witness answered that he should think they were on the east side of the road from the premises on which Christopher Edee resided, and opposite in the corner. The lands mentioned in the certificate were sold by me at Crandall's. What description did you read to the bidders?" Objected to by the defendant's counsel, and the objection sustained. Decision excepted to by the plaintiff's counsel. "Have you any knowledge of lands lying near the premises in question, which Phineas F. Wilson owned and occupied? Answer. Only by hearsay. Question. Do you know of P. F. Wilson's ever owning or occupying any land south of any portion of the premises in question, and south of the road running east and west? Answer. I never knew of his owning or occupying any land except as described to me by Bishop, as I took it lying between the roads. It has been so long since I had the description from Bishop, I do not remember. Question. Can you say whereabouts in this three cornered piece between the roads, this land spoken of as owned by Wilson, lay? Answer. On the south side as I understood it, but can't say as it run clear through the acre to the road running past Anna Passage's. I took it to be a part of the three cornered piece. Question. In speaking of the south bounds of the lands in the certificate, do you understand that as being the north bounds of the Wilson land described to you, and of which description you have just been speaking? I do not know where the bounds of the Wilson land did lie, and I can not tell where the boundaries of Wilson's land were shown to me, I can not answer it. Question. Did you consider the south bounds of the lands mentioned in the certificate as being south of the north bounds of the Wilson lot described to you and which description you have given to us on your cross-examination? Answer. I

considered, and I meant from the description given to me to convey all the land to Phineas Wilson's north line. I supposed at the time there were two acres. I meant the description I have given here in my broken way, as near as I could, being so flustrated." The counsel for the defendant then offered to read in evidence, a deed of conveyance from the sheriff of Cayuga county, to George Passage, dated September 6th, 1848, of the premises described in the certificate of sale; to the introduction of which evidence, the counsel for the plaintiff objected, on the following grounds, to wit: 1st. That the deed appeared not to be given for or to include the premises in question. 2d. That it appeared in evidence that the sale of the premises described in the certificate and deed, were not duly advertised, and that Bennett, the plaintiff in the execution, was not a purchaser in good faith, without notice, and that the deed was void for uncertainty in description. Which objection was overruled by the referee, and the counsel for the plaintiff excepted to the decision. Said deed was then read in evidence by the counsel for the defendant. The counsel for the defendant then read in evidence a certified copy of the transcript of said judgment, indorsed as filed in the clerk's office of the county of Cayuga, August, 1842; also a transcript of said judgment, which was docketed in Cayuga county clerk's office, August 5th, 1842, 9 A. M. Testimony was then introduced, for the purpose of showing fraud in the deed from Christopher Edee to Conrod Edee, dated September 10, 1839; which it is unnecessary to notice. Phineas F. Wilson was next examined as a witness on the part of the defendant, and testified as follows: "I am the person who deeded the land on the north of the road leading from Weedsport to Jordan, to Christopher Edee—it did not touch the road all the way, there was a little gore on the southeast corner, belonging to the Passage farm. I never owned land on the south of that—I never owned land in that neighborhood since 1837. I have never owned any land south of the three-cornered piece. The land I sold to Edee was bounded on the east by Field's, on the north by the Margaret Edee lot, west by the Cato road, and south by the road running from Weedsport to Jordon, and the gore of the Passage land.

There was a little over three acres in my lot, including the acre in the southwest corner, and I should think between one and two acres in the Margaret Edee lot." The counsel for the plaintiff here produced and read in evidence a deed of conveyance executed by George Passage and wife to Margaret Edee, dated October 26th, 1836. The premises conveyed by said deed were described in the deed as follows, to wit: "Being a three-cornered piece of land lying on the east side of the highway leading from Anna Passage's to the Erie canal, and bounded on the west by the centre of said highway above described, on the east by lands owned or occupied by Joshua Bishop, and on the south by lands now owned by P. F. Wilson, supposed to contain about two acres of land, more or less," which said deed was recorded in the clerk's office of Cayuga county, December 3d, 1838. Said Wilson further testified as follows: " The premises described in the deed from George Passage to Margaret Edee, are what is called the Margaret Edee lot." The counsel for the plaintiff then read to witness from the sheriff's certificate, the description of the premises first described therein, also the description in the complaint, and then inquired of the witness whether the two descriptions embraced the same premises, to which the witness answered, "I should think that the description in the complaint, including the acre in the south-west corner, is the same land that I sold Christopher Edee." The plaintiff's counsel then read to the witness, the description from the sheriff's certificate of sale, and then asked the witness, " Could this description include any land you sold to Christopher Edee ?" Answer. "It could not, according to the reading of it, because I owned no land there at the time. If I had owned any land there at the time, it would not include my land."

The counsel for the defendant again called as a witness John S. Everts, and put the following question to him: "At the time you made the levy where did you understand P. F. Wilson's land to lie ?" which question, and the testimony called for by it, was objected to by the counsel for the plaintiff, on the ground, among other things, that it was irrelevant, and that the understanding of the witness as to the location of the Wilson lot, could

have no bearing upon the case.   The referee overruled the objection.   The counsel for the plaintiff excepted, and the witness answered, "I understood it to be on the south side of the road, when I made the levy and advertised.   What brings it more fresh to mind is, that since my examination here before, I recollect a conversation with David Passage who was cradling wheat on the south side of the road, and which I supposed was on Wilson's land.   If I have said that Wilson's land was. on the north side of the road, when examined before, I meant south side instead of north side.   I was told at the time that Christopher Edee had sold one acre in the southwest corner."   "At the time I made the sale I read the notice and put up for sale the premises therein described.   If I said on my previous examination that the Wilson lot might have extended so far as to include the one acre, I did not mean so.   I do not know that it ran so far west as the acre.   I did not get the Wilson boundary at all, I find.   I probably was mistaken about it.   Seeing Passage cradling wheat, it got into my mind that was the land that belonged to Wilson.   Since the adjournment I have talked with Passage and refreshed my mind more in relation to it.   Did not hear P. F. Wilson testify.   I now know where the Margaret Edee lot is, but did not know before today, to my knowledge."

The counsel for the plaintiff then proposed to the witness the following question.   "Question.   Suppose the Wilson lot spoken of to be bounded on the north by the Margaret Edee lot, then would the boundaries of the premises mentioned in the sheriff's certificate include the premises mentioned in the complaint? Answer.   No."

John J. B. Rude was then recalled and examined as a witness by the counsel for the plaintiff, and testified (upon the description of the piece of land first mentioned in the certificate being read to him,) "The boundaries of the premises read from the certificate, do not include the premises occupied by White, as mentioned in the complaint, they agree with the boundaries of the Margaret Edee lot, and I take them to be the same, having lived about thirty years within about one hundred rods of the Margaret Edee lot, and having been acquainted with it for that

Mason *v.* White.

time, and frequently been on it, should think there was about two acres of it. It is level and deceptive to the view. I formed my opinion as to the boundaries upon the fact that the premises mentioned in the certificate are bounded south by the Wilson lot. If the Wilson lot lay south of the road, the description in the certificate would include the premises in question."

Joseph Manning was next examined as a witness on the part of the plaintiff, and testified as follows : " I am acquainted with the premises known as the Margaret Edee lot—for twenty years have I lived within one half mile of them and known them during that time, worked on them when Samuel Wilson owned the lot next south, I mowed the lot—have since then frequently been on it. There is in the neighborhood of two acres of it. About twenty years ago I built a fence on the south side of it."(*a*)

(*a*) MAP OF THE PREMISES
    IN CONTROVERSY.

The evidence here closed, and the referee decided that the evidence on the part of the defendant entitled him to a judgment, and reported in his favor. And from the judgment entered upon the report, the plaintiff appealed.

*Wm. Porter, Jun.* for the appellant.

*Wm. J. Cornwell*, for the respondent.

*By the Court*, ALLEN, J. Upon the evidence in this cause I should come to a conclusion different from that to which the referee has arrived, as to what land the sheriff intended to sell. The recollection of the sheriff is evidently very far from being distinct, or even satisfactory to himself; and he does not appear to have been very familiar with the premises, and the farms adjacent. Without in the least impeaching the integrity or candor of the sheriff, it may well be said that his testimony is not reliable, as to what premises he had in his mind at the time of the levy and sale upon the execution against Christopher Edee. It would be remarkable if, at this distance of time, and with a multiplicity of other transactions pressing upon his mind during the entire interim, he should be able to recollect any thing of the details of this transaction. His intent, however, is not material to the decision of this cause, except as such intent is evidenced by his acts, and is expressed in the deed which he executed pursuant to his levy and sale. In this case the inquiry into the intent of the officer making the sale and executing the conveyance under which the defendant claims title, must be restricted to the terms used, and to the intent which the language of the instrument expresses. There are several reasons why this should be so, in a case like the present.

I. The statute regulating sales upon execution requires, 1st, that the notice of sale should contain a description of the real estate, with common certainty, by setting forth the name of the township or tract, and the number of the lot, if there be any, and if there be none, by some other appropriate description; that is, a description by which it may be known and distin-

guished from every other parcel of land. (2 *R. S.* 369, § 35.) And 2d, that the certificate of the sale, to be made and filed by the sheriff, shall contain a particular description of the premises sold. (*Id.* 370, § 42.) The deed of course follows the notice and certificate.

II. Public policy requires that the notice of sale should contain a description of the premises, by which they may be known and located, that all persons may bid and become the purchasers upon equal terms ; and that it may not be left to the sheriff, as he may like or dislike the purchaser, or for any other reason, to make the sale operative upon such of several parcels of land as he may see fit, by a subsequent declaration of his secret and undisclosed intent ; or to enlarge or diminish the boundaries of the premises actually sold, by a like declaration.

III. The judgment debtor should be able to know with certainty, from the notice and certificate of sale, what premises were actually sold, that he may understandingly determine whether he will redeem them, or whether in fact any premises to which he has a claim have been sold.

IV. Judgment creditors and mortgagees should be able to determine from the certificate what premises have been sold, that they may protect their interests by acquiring the title of the purchaser, under the statute, if they should see fit to do so. These reasons, amongst others, should, in my judgment, preclude a resort to extrinsic evidence to establish the intent of the officer making the sale. It is not like the case of a deed *inter partes*, and the rules applicable to such case need not be examined. Deeds of bargain and sale between man and man may doubtless, to some extent, be explained by showing the intent of the parties; and in some cases if the deed, by reason of fraud or mistake, fails to express the true intent, it may be reformed and made to express such intent. It is very clear however, that a deed of a sheriff can not thus be reformed, and that if it follows the notice and certificate of sale, it can not be in any respect varied, for any reason, or made operative, except according to its terms. There is no doubt that in this case extrinsic circumstances may be resorted to to explain the

terms used, and locate the premises described in the deed. This would, however, be only to establish and carry out the intent expressed in the deed, and not an intent which the terms of the deed fail to express. If an individual own two tracts, having the same name, and conveys one, by its name, extrinsic evidence might be resorted to, to show which was intended; but in a like sale by a public officer, upon an execution against the owner, if the officer either through ignorance that there were two tracts of the same name, or for any other reason, should omit to designate which tract was sold, I can not think that the sale would be valid. It would be void for uncertainty.

The question before us is one of construction, and is matter of law. (*Frier* v. *Jackson*, 8 *John.* 495.) It is not a question of boundary, which would be for the jury and in this case for the referee to determine, and perhaps not the subject of review upon this appeal. (*Barclay* v. *Howell's Lessee*, 6 *Pet.* 498.) It is conceded that the entire description of the premises in the deed of the sheriff, will not apply to the premises in dispute. But it is sought to bring the case within the principle of the maxim, *falsa demonstratio non nocet*, and to include the premises in dispute by a rejection of the last clause of the description in the deed under which the defendant claims. The rule upon the subject appears to be that if there are certain particulars once sufficiently ascertained, which designate the thing intended to be granted, the addition of a circumstance, false or mistaken, will not frustrate the grant; (*Jackson* v. *Clark*, 7 *John.* 228;) that if there is a certain description of the person, or thing devised, and a further description is added, it is immaterial whether the superadded description be true or false. (*Jackson* v. *Sill*, 11 *John.* 212. *Jackson* v. *Loomis*, 18 *Id.* 84; *S. C.* 19 *Id.* 450. *Doe* v. *Roe*, 1 *Wend.* 541.) The description of the premises sold by the sheriff, as contained in his deed, is as follows: "All that certain piece or tract of land situate, lying and being in the town of Brutus and county of Cayuga, on lot number fifty-five, bounded on the west by the highway as leading from Anna Passage's to the Erie canal, east by land occupied by Joshua Bishop, and south by land owned

Mason *v.* White.

by P. F. Wilson, containing about two acres of land, be the same more or less." The premises in dispute were once owned by P. F. Wilson, but are not bounded on the south by any lands that are or ever have been owned by him. The southern boundary, then, the defendant claims, should be rejected as false or mistaken. But one parcel of land can be, upon any construction, included within this description, and yet there are two parcels to which it will apply if, as is claimed by the defendant, it can be applied to the premises in dispute; for directly north of and adjoining the premises in dispute is another parcel of land answering the description in the sheriff's deed, in every respect, and in which the judgment debtor had at the time an interest in right of his wife, liable to be sold on execution. The premises in question the debtor had before then conveyed by deed which the referee now adjudges to be fraudulent. Now, which of these two parcels of land can be said to be sufficiently ascertained or to be certainly described, or described with certainty to a common intent, by this description equally applicable to both? Shall we leave it to the sheriff to declare which he intended, or shall we leave it to the purchaser to elect which he will take? In a case like the present, if two distinct parcels of land are found equally answering the description, the conveyance must be held inoperative, for the reason that it was intended to pass but one, and it can not be determined which was intended. (*Richardson* v. *Watson*, 4 *Barn. & Ad.* 787. *Den* v. *Leggett*, 3 *Murph.* 373. 1 *Phil. Ev.* 532. *Osborn* v. *Wise*, 7 *C. & P.* 761.) Were this a question upon the construction of a devise, or of a deed *inter partes*, it is possible that evidence of intent might be received to control the application of the description of the subject matter of the devise or grant, (*Pritchard* v. *Hicks*, 1 *Paige*, 270;) or both parcels might be held to pass, rather than the conveyance be defeated. (*Worthington* v. *Hyllyer*, 4 *Mass. Rep.* 206.) In such cases grants are construed most strongly against the grantor. But such can not be the principles applicable to a sale by a public officer, under judicial process, in which persons other than the officer and the purchaser are interested. (*See per*

*Chancellor,* 13 *John.* 552.) Neither is this a case of a double description, as are many if not most of the cases in which the maxim referred to has been applied. All the particulars stated in the sheriff's deed are necessary to identify the thing described, and in such cases evidence of intent to embrace a matter not answering every part of the description is not admissible, even in actions involving the construction of devises, or deeds *inter partes.* (6 *Cowen,* 720, *note.*) But if we go further and find that the description, when reformed as the defendant would have it reformed, is still a very loose and imperfect description of the premises in dispute, and would even then as well, if not better, describe the other parcel of land which the judgment debtor held in right of his wife, and further, that the description contained in the deed, without alteration, is an accurate description of the latter parcel, by which it would be readily recognized by one familiar with both parcels and the adjacent lands, no court or jury would be authorized to disregard and reject the true description, or apply it to a parcel of land not embraced within it. In other words, if a parcel of land exists, in which the debtor had an interest liable to levy and sale on execution, and which in every respect and particular answers the description of the premises sold, no part which is necessary to a perfect description will be rejected as surplusage, so as to embrace a distinct or different parcel of land, to the exclusion of the one accurately described.

I. If, as is claimed by the defendant, it is conceded that the sheriff intended by the south boundary of the lands sold, the land on the south side of the road from Weedsport to Jordan, which, in fact, never belonged to Wilson, although it would be difficult to suppose that in that event the sheriff would not have bounded south on the road, which was a prominent and well defined boundary, still the description will be imperfect. (1.) There is no northern boundary, and no data from which a northern boundary can be given. (2.) The quantity of land in the premises in question exceeds the quantity mentioned in the deed, after excepting an acre in the southwest corner, which would be

included in the description, but which it is not claimed, was sold at the sheriff's sale, the same belonging to a stranger.

II. If the south boundary, as given in the sheriff's deed, is stricken out, then we have but the east and west lines, equally applicable to the two pieces which it is claimed were subject to be sold upon the execution, with no means of telling which was intended, and fixing the northern and southern boundaries, either by reference to actual occupation or in any other way.

III. With the southern boundary wanting, the residue of the description would better describe the north parcel of land than the premises in dispute. The north parcel which the judgment debtor occupied, and which he held in right of his wife, was situated in the angle formed by the intersection of the Anna Passage road with the line of Bishop's land, so that no north bounds were necessary, the parcel being triangular, and the quantity of land in this parcel is about the same as stated in the deed.

IV. But the description contained in the sheriff's deed is precisely that of the land conveyed to the wife of the judgment debtor. 1. As before said, it has no northern boundary: it is bounded on the west by the road mentioned, on the east by Bishop's land, and on the south by lands then lately owned by P. F. Wilson. It is true that the deed speaks in the present tense, when speaking of land owned by P. F. Wilson, but as there is no other land in the vicinity, to which it can apply, the land *recently* owned by Wilson would be intended, (*Cowen & Hill's Notes*, 1377, *and cases cited*,) and the deed should receive this construction *ut res magis valeat quam pereat.* 2. The deed to Mrs. Edee, of the triangular lot, was on record, and the conveyance to her was by the same description by which the sheriff sold, with the single exception that the sheriff, in his description, bounds the south " by lands owned by P. F. Wilson," and Mrs. Edee's deed bounds south " by lands *now* owned by P. F. Wilson," the word "now" being omitted in the sheriff's deed—a mere verbal and that an immaterial departure from the recorded and well known description of Mrs. Edee's land. The purchaser could, without difficulty, and without parol proof or

reference to extrinsic circumstances, trace his title to the triangular piece by the description given in the sheriff's deed. 3. As evidence that in fact this piece, and not the premises in dispute were sold, it may be remarked that Mrs. Edee's deed was on record, the judgment debtor's occupation was public and the right to sell that was undisputed, while neither the deed from Wilson to the debtor, nor the one from the debtor to his brother, were on record; and there is no reason to suppose that the sheriff or the purchaser, who was the judgment creditor, had any idea that the debtor had any title to, or interest in, the Wilson premises by which they bounded the land actually sold, on the north. I think that it is very evident that the purchaser either acquired a title to the triangular tract, to the extent of the estate of the judgment debtor, or that he acquired no title to any land, by reason of the uncertainty in the description. The amount bid may be referred to as some little evidence—very slight it is true—of the estate which the purchaser supposed he was getting in the lands sold. In *Jackson* v. *DeLancy*, (13 *John*. 538,) it was held by the court for the correction of errors, that in a sheriff's deed the land sold must be described with reasonable certainty, and that the sheriff can sell nothing which the creditor can not enable him so to describe. The remarks of the chancellor, at pages 551 and 552, are applicable to this case, upon the theory that the triangular piece of land is not clearly described in the sheriff's deed, and that it is left uncertain which parcel of land was intended, and clearly show that the premises in question did not pass to the purchaser at the sheriff's sale. In *Jackson* v. *Striker*, (1 *John*. *Cas*. 284,) it was held that nothing will pass at a sheriff's sale but what is then known and promulgated. *Dike* v. *Lewis*, (4 *Den*. 237, *S*. *C*. 2 *Barb*. *S*. *C*. *Rep*. 344,) decides that a comptroller's deed of lands sold for taxes, which designates the lot by a wrong number, is void, though it contains other matter of description which, if the number were rejected, would sufficiently identify the lot. If this had been a deed of bargain and sale between individuals, the number of the lot might and would have been rejected, and the deed would not have been held void. The

same principle is decided in *Tallman* v. *White*, (2 *Comst.* 66,) and the same distinction between deeds between individuals and deeds executed by public officers recognized, it being allowed in the former, to reject a part of the description of premises on account of its falsity, while such practice is not allowable in deeds of the latter class. We are of the opinion, therefore, 1. That the deed under which the defendant claims title does not embrace the premises in question, but does include the triangular piece owned by Mrs. Edee. 2. That if the Margaret Edee tract is not included in the deed, then the deed is void for uncertainty, and no title passed to the purchaser. 3. That in the construction of the sheriff's deed every part of the description must be read and satisfied with reasonable certainty, and that no part of it can be rejected for its falsity.

The judgment must be reversed, and a new trial had before the referee : costs to abide the event.

[ONEIDA GENERAL TERM, January 6, 1851. *Gridley*, *Allen* and *Hubbard*, Justices.]