JOSEPH P. CHILDS *v.* ELIAS S. BALLOU.

Where the officer's return of a levy upon the land of an execution debtor, and the notices and advertisements of the sale under the levy, are wholly uncertain in their description of the location, extent, and quantity of the land levied upon and sold, except by a reference therein to a deed on record, and there is no such deed on record, the levy and sale are void; and the purchaser at the sale need not accept the deed of the officer, or pay the price bid, notwithstanding *he* knew, at the time of his bid, the locality, extent, and quantity of the land levied and sold; the policy of the law requiring, for the protection of the interest of the execution debtor and of his creditors, that his land should not be sacrificed at a sale *in invitam*, under legal process, from a want of the appointed notice to the public of what is sold, and therefore what they may reasonably bid for it, and that both he and they should have the sure and appointed means of ascertaining what property of his has been sold under the levy.

THIS was an action of the case, brought by the plaintiff, a deputy sheriff of the county of Providence, to recover the sum of $506, at which price a tract of land, levied upon by the plaintiff under an execution against the Woonsocket Union Railroad Company, had been struck off to the defendant at the sheriff's sale.

The case was tried, both in law and fact, by Mr. Justice Shearman, at a special court of common pleas, held by him at Providence on the 12th day of June, 1857, though not decided until the 21st of September following; and is the same case in which an unsuccessful motion was made to dismiss the bill of exceptions to the decision of Judge Shearman, reported supra, p. 370. It was proved at the trial, that an execution, out of this court, in favor of Thompson & Cady for $17,354.55, against the Woonsocket Union Railroad Company, having been delivered to the plaintiff, as a deputy sheriff, for service, on the 12th day of January, 1857, he levied the same upon the line of the defendant company's railroad, as lands held by the company in the towns of Smithfield, Cumberland, and Burrillville, in the county of Providence; and, in his return on the execution, and in his notices and advertisements of sale under the levy, described that portion of the land levied upon, which was sold to the defendant, as " one other strip or parcel of land lying and being in said Cumberland, and is located as follows, viz : commencing on the southerly side of Elias Ballou's land,

to land of Luke Aldrich on the north, or however the same may be bounded; it is the same lot of land which the New York and Boston Railroad Company purchased of Elias Ballou. Said lot was appraised for said parties by Lyman Burlingame, George Law, and Aaron Burdon, as commissioners or referees, reference being had to the aforesaid deeds and the records thereof." Under this notice and advertisement, after sundry adjournments, the lot in question was, on the 24th day of April, 1857, struck off to the defendant, as the highest bidder, for the price of $506, at the sheriff's sale, under the levy. Whilst bidding, the defendant remarked, " that he wished people to understand that it was only the right of way which was being sold ; " to which the plaintiff replied, " that he informed him and all present that he was selling just what was advertised, no more, nor no less, whatever it was." The defendant also admitted, that at the time of sale, he heard the advertisement read, and said, " that he would have the lot if it cost him a thousand dollars." A proper memorandum having been executed, a deed of the lot, describing it in the same words as in the return and advertisements of sale, was duly tendered to the defendant, who refused to accept the same, or to pay the sum by him bid for the lot at the auction.

It appeared at the trial, that in 1856, a lot of land, described in the deed as lying partly in the town of Cumberland, R. I., and partly in the town of Blackstone, Mass., and accurately bounded out, had been sold and conveyed by the defendant to the New York and Boston Railroad Company, being, substantially, the same lot bid off by the defendant; and that running the line of said lot from the southerly side of the defendant's land to land of Luke Aldrich, on the north, as described in the return and advertisements of the plaintiff, the line of the lot would extend some fifteen rods into the state of Massachusetts. The deed of the plaintiff to the New York and Boston Railroad Company had never been put upon record in the town clerk's office of Cumberland. It was admitted that by a union of this railroad company with the Woonsocket Union Railroad Company, formed prior to the levy, the company now known as the New York and Boston Railroad

Childs *v.* Ballou.

Company had been formed, which had assumed the liabilities of the Woonsocket Union Railroad Company existing at the time of the union.

At the trial, it was contended by the defendant that the levy and deed were void; *first*, because the land described in the return, notices and advertisements, extended beyond the jurisdiction of the court issuing the execution and of the levying officer, fifteen rods into the state of Massachusetts; and *second*, because the description of the land levied on and sold, in the return, notices, advertisements and deed tendered, was so vague, indefinite, and uncertain, that it was impossible to ascertain therefrom the location, extent, or quantity of the land levied on and sold; the deed referred to in this description not being in the hands of the defendant or of the officer at the time of sale, nor upon record; and that the knowledge of the defendant of the contents of the deed, as one executed by himself, did not cure this uncertainty. The court below, sustaining these views, decided the case in favor of the defendant, and allowed the plaintiff's exceptions to his decision, which now came on to be heard in this court.

*H. S. Bartlett* and *T. A. Jenckes*, for the plaintiff: —

1st. The levy and deed are not void, because the land levied on and sold is, at one extremity of it, bounded by the line of land adjoining, which is beyond the line of the state of Rhode Island.

The execution was issued on a judgment of this court; the officer who served it was a deputy sheriff of the county of Providence, and in his levy and advertisement, the land attached and offered for sale was described as lying and being in the town of Cumberland, in said county. This advertisement was read at the sale, and made part of the conditions of sale. This description of the locality, and the subsequent words—" or however the same may be bounded,"—qualifying the reference to the line in Massachusetts, and the known and admitted fact that there was a large tract of land coming within the description, in the levy, advertisement, and deed, within the state of Rhode Island, and in the town of Cumberland, make the description in the levy sufficiently certain as to state lines.

2d. The description in the levy, return, and deed, is not void for uncertainty.

1. It was a strip of land on the line of the railroad, as located and platted according to the provisions of the charter.

2. It was in the town of Cumberland.

3. It was the strip of land sold by the defendant to the railroad. company, and which he had actually set off to them ; and in his deed to the company it is described as a strip measuring a given number of feet on each side of the centre line of the railroad as located.

4. Reference is had to an appraisal by commissioners, or referees, (naming them,) and whose award would give the description of the land.

5. The defendant was informed of what was to be sold, and admitted that he knew what he was buying.

6. The exact bounds of the land can be ascertained from the description.

7. If there is any ambiguity in the description, it is a latent one, which may be explained by parol testimony.

The defendant sold the land to the railroad company, and the sheriff's deed conveyed back to him all that the railroad company had bought, so that the defendant's land was restored to its original boundaries. His estate was made certain, in the most certain manner, as he was bounded by his own land in this deed, on all sides, except at the extremities of the strip.

8. He knew exactly where the land was, and how bounded.

3d. Both points resolve themselves into one. Was the description sufficient, either in the levy, or in the deed ?

As the deed is based upon the levy, the following authorities show that the description in the return and advertisement is sufficient. *Howard* v. *Daniels*, 2 N. H. 137 ; *Whitaker* v. *Sumner*, 9 Pick. 308 ; *Bacon* v. *Leonard*, 4 Pick. 277 ; *Crosby* v. *Allen*, 5 Greenl. 453 ; *Taylor* v. *Mixter*, 11 Pick. 341 ; *Roberts* v. *Bourne*, 10 Shep. 165 ; *Veazie* v. *Parker*, Ib. 170 ; *Rollins* v. *Mooners*, 12 Ib. 192 ; *Leadbelter* v. *Brethen*, 6 Ib. 327 ; *Lambard* v. *Pike*, 33 Maine, 141. The cases which seem to require a greater particularity of description in levies, are under statutes which require the execution to

be extended by metes and bounds. Our statute makes no distinction between a levy and an attachment, in respect to description. The location of the land is to be described with a reasonable certainty under both, as in a deed. " If the description of the premises in a deed or levy is sufficient to identify them, although some particulars may be false or inconsistent, the deed or levy will not be annulled." *Worthington et al., Ex'rs,* v. *Hylyer et al.* 4 Mass. 205; *Vose* v. *Handy,* 2 Greenl. 322; *Wing* v. *Burges,* 1 Shep. 111. " A sheriff's deed, carrying all the title of a defendant in an execution to a lot of land, described as lying on the south side of a ˙creek, is not void for uncertainty in the description of the premises, although but a single line be given in the deed as a boundary, where it appears that the defendant claimed to be the owner of all the lands situate between such line and the creek." *Dygert* v. *Pletts,* 25 Wend. 402; see also, *Marshall* v. *Greenfield,* 8 Gill & John. 349; *Huggins* v. *Vutchner,* 4 Dev. & Batt. 414; *Parker* v. *Swan,* 1 Humph. 80; *Reid* v. *Heasby,* 9 Dana, 324; *Rollins* v. *Momers,* 12 Shep. 192; *Bates* v. *Willard,* 10 Met. 62; *Randolph* v. *Coulter,* 8 Ala. 606; *Mathews* v. *Thompson,* 3 Ohio, 272; *Douglas* v. *Mc Coy,* 5 Ib. 522; *Cowan* v. *Wheeler,* 31 Maine, (1 Red.) 439; *Grover* v. *Howard,* Ib. 546; *Bates* v. *Bank of Missouri,* 15 Mo. 309; *Bank of Missouri* v. *Bates,* 17 Ib. 583; *Collier* v. *Vason,* 12 Geo. 440; *Jackson* v. *Jackson,* 13 Iredell, 159; *Donaldson* v. *Bank of Danville,* 8 Harris, 245; *Lisa* v. *Lindell,* (6 Bennett) 21 Mis. 127.

The cases of descriptions in deeds, which are aided by extrinsic evidence, sustain these propositions. *Crafts & another* v. *Hibbard & another,* 4 Met. 438; *Melvin* v. *Proprietors of Locks and Canals on Merrimac River,* 5 Ib. 15; *Wheeler* v. *Randall,* 6 Ib. 529; *Thatcher* v. *Howland,* 2 Ib. 41; *Venable* v. *McDonald,* 4 Dana, 336; *Hodges* v. *Strong,* 10 Verm. 247; *Flagg* v. *Bean,* 5 N. H. 49 (Foster's Reports); *Pierce* v. *Brown,* 24 Ib. 165; *Ives* v. *Kimball,* 1 Manning (Mich.) 308; *Bosworth & another* v. *Sturtevant & another,* 2 Cush. 392.

*C. Robinson,* for the defendant:—

The defendant contends, that the first ruling of the court excepted to should be sustained, because a portion of the land

levied upon and sold appeared, upon the proof, to be in Massachusetts. The land levied upon and the land sold is the same; and extends from the defendant's line, on the south, to the land of Luke Aldrich, which carries the levy some fifteen rods into Massachusetts, and is described in the levy and advertisement of the sheriff as the same lot conveyed to the railroad company by Elias Ballou, and appraised by the persons therein named; and this lot, according to the proof, was what the sheriff sold, "no more and no less," as reported in the evidence, and as advertised to be sold. The defendant submits, that the sheriff must sell according to his levy, and only as he levied. He must sell as advertised; otherwise, there has been no compliance with the law as to the notifications to be given by the officer under the statute. See statute of 1844, p. 116. The defendant would not have attempted to purchase, if he had not supposed that he would obtain the whole title, up to the Luke Aldrich land— that land being also the northerly bound of defendant's land; and at law, certainly, he cannot be compelled to take a less estate than he purchased. *Thompson* v. *Gould,* 20 Pick. 141, and cases there cited; Chitty on Contracts, 298. The sheriff intended to sell from defendant's line, on the south, to the Luke Aldrich land, on the north; and the defendant supposed he was purchasing the whole land included in those lines. This proved to be a mistake; and it is submitted that there was no contract which a court of law or equity would enforce.

This exception of plaintiff, as allowed, *does not meet* the point taken by the defendant, and is, in truth, an exception to the finding of a fact by the judge, to which finding no exception lies. *Shong* v. *Barnes,* 11 Verm. 221; *Kirby* v. *Mayo,* 13 Ib. 103; *Lansing* v. *Wisvill,* 5 Denio, 213.

The court was right in its ruling upon the law involved in the second exception taken by plaintiff; because the property attached must be described with reasonable certainty. *Whally* v. *Newcomb,* 10 Geo. 74; *Jackson* v. *Roswell,* 13 Johns. 97; *Jackson* v. *De Lancy,* 13 Ib. 538; *Simmons* v. *Catlin,* 2 Caines, 61; *Tripp* v. *Ide et al.* 3 R. I. 51. It is the duty of an officer selling under execution to give as full and complete a description of the estate attached, as, in the exercise of ordinary diligence, it

is possible for him to give, in view of its character, condition, and location; so that the public may best understand what particular property is to be sold. *Collier* v. *Nason*, 12 Geo. 440. A levy on execution should describe the property levied on with such certainty as will enable any one to know the property taken on execution; and a levy on one half a lot, not saying which, is too indefinite. *Gault* v. *Woodbridge*, 4 McLean, 329. A levy in the following words, " Served this execution on a tract of land adjoining the land of James McDonald, Thomas Cannon, and others, containing 160 acres," does not sufficiently identify the land levied on; and the sale and sheriff's deed based thereon are void. *Helm* v. *Alexander*, 10 Humph. 44. A levy on land sold on execution of " defendant's lots at Nahunta Depot," is too vague and uncertain to be effectual. *Edmondson* v. *Hobbs*, 11 Ired. 373.

There are two principles upon which the validity of execution sales rest:—

1st. Purchasers must, from the levy, have the means of knowing what land is to be sold, so as to form some estimate of its value; and,

2d. There must be such a description as shall identify the land. *Gibbs* v. *Thompson*, 7 Humph. 179.

The defendant insists, that the levy must be such that it would be good against the debtor, and preclude him from contesting the title of the purchaser upon the ground of defects in the levy. A sheriff's levy and deed of " 1055 acres of land, part of a tract of 1731 acres, or thereabouts, situated on the east branch of the Little Miami River, being part of a tract located in the name of R. T. by J. L.," is void for uncertainty. *Throckmorton* v. *Moon*, 10 Ohio, 42. Nor is the defect in the levy one that could be amended in the deed; for the deed must follow the levy. *Mason* v. *White*, 11 Barb. S. C. R. 173. The reference to the levy, if controlling and defining the description, will, in this case, show a portion of the land to be in Massachusetts. A description in a levy, by reference to land heretofore conveyed, is not sufficient, unless it appears in proof that the record will make it certain. *Gilman* v. *Thompson*, 11 Verm. 643.

BRAYTON, J. The bill of exceptions, in form, sets forth two

distinct rulings of the judge who tried the cause, and in form also excepts to each. In substance, however, the rulings are the same; namely, that the levy made by the officer, and the deed tendered by him after the sale, were void. This is the substance of the ruling, though distinct reasons are given for coming to that conclusion. The first reason was, that assuming that the deed referred to in the levy could be properly imported into the officer's·return as a description of the land levied upon, the levy and deed were void; since they described land lying partly in Massachusetts and beyond the jurisdiction of the officer, which he had no power to levy upon or sell, and to which, if he sold, he could give no title. The second reason given was, upon the assumption that the deed referred to could not be imported into the return; and that, without it the description of the premises, in both the levy and the deed tendered, was so vague, indefinite, and uncertain, that it could not be determined thereupon what was the location, quantity, or extent of the land levied on or sold; and so, both were void; and that this was not aided by the fact that the defendant had full knowledge of the deed referred to, and of its contents, and of the exact locality of the land described therein.

It will not be necessary to consider how the levy may be affected by the fact that a portion of the premises was out of the officer's jurisdiction, whether it would avoid the levy for the whole, or only *pro tanto*. If the levy be void in other respects, and for other reasons, a determination on this point in favor of the plaintiff would not enable him to recover. We need only determine the question, whether the levy is or is not void for uncertainty in the description, upon the facts as they· are assumed to have been proved at the trial.

Is the description in the officer's return of the levy in this case sufficient to point purchasers to the land advertised and sold?

The description in the levy is, " a strip of land, lying in the town of Cumberland, commencing on the southerly side of Elias S. Ballou's land, to land of Luke Aldrich on the north, or however the same may be bounded." So far, it is of the most indefinite character. No person could find the premises by the

light of it. The land is somewhere in Cumberland. It begins somewhere on the southerly line of Ballou's land, and extends probably to some point on land of Luke Aldrich; but *where*, on either line, is not fixed. How wide it is, or how bounded on either side, is wholly indeterminate. It is not stated, as is suggested in argument, that it lies upon the line of the railroad.

It is claimed, however, that the levy is made sufficiently certain, by the reference therein made for a more particular description. The reference is thus made: " It is the same lot of land which the New York and Boston Railroad Company purchased of said Elias Ballou;" and " said land was appraised (by certain individuals, naming them) for the parties," " reference being had to the aforesaid deeds and the records thereof." It does not appear that there was any written appraisement, or any record of any such. There was no record of any such deed as is referred to. It is admitted that such a deed was executed to the railroad company by Ballou, the defendant; and he produced at the trial what purported to be a copy of it, and which he stated was a copy. By the reference in the officer's return, this deed was to furnish to the inquirer all the necessary information. He was pointed to nothing else. To this alone he must look, to determine what was to be sold and conveyed.

Had it been put upon record, so as to be accessible to all persons, it clearly would give full and ample information. The description there is full and precise. But there was no such record; and the deed was not accessible to any one who sought information; purchasers generally had no means to determine what they might bid for, more than if no reference had been made. It was a reference to what they could not see and examine.

An argument addressed to the court below, and now addressed to us, on the part of the plaintiff, is, that as the defendant was the person who himself executed the deed, and therefore knew precisely what was intended to be levied on and sold and what was advertised for sale, he ought not to be permitted to aver that the description is uncertain, and that he could not determine what was to be, or what was, sold. If the question

46 *

of certainty concerned the defendant only, as a particular bidder or purchaser of the estate, the defence here set up might not commend itself to the consideration of the court. He certainly could not say that he was imposed upon or deceived. But this question concerns not merely this particular defendant, and purchasers, but others—the judgment debtor, whose estate it was proposed to sell, and other judgment creditors and purchasers generally. It concerns no less than the general policy of the law in relation to sales at public auction by sheriffs and other officers, on executions for taxes and other public purposes.

It is claimed by the plaintiff, that the rules applicable to the construction of deeds, *inter partes*, are applicable to a levy and deeds by officers of the law. The cases cited below, 13 Johns. 538, 13 Ib. 97, 11 Barb. 173, distinguish between them, and hold, that a description may be sufficient, as to ordinary deeds of conveyance, which would avoid a levy or sale by a public officer; and there certainly appears to be good sense in the distinction. In the one case, the owner is acting voluntarily in disposing of his own estate. The purchaser has the means of informing himself as to what he buys; and no other persons are any way interested or affected by it. If the description in the deed when executed is not entirely clear, in order to give full effect to it the law will make every intendment in favor of the grantee; and in cases of latent ambiguity will, in many cases, admit extrinsic proof, so that, if, by any means, it may be made certain, the deed shall be held good; and in such case the proof will be admitted whenever the question arises. But in case of sales by officers of the law upon levy and execution, or for taxes, and at public auction, the policy of the law requires, not that there should exist the means of making certain at some time what is otherwise indefinite, but that it should exist at the time of the sale,—that it should be within the power of all those who are by the notice invited to attend the sale and become purchasers. The duty of the officer is, if he will assume to convey the estate of another person *in invitum*, that he shall sell under such circumstances that it may bring a fair and reasonable price, and not be liable to be sacrificed from a want of information in those who would be likely to purchase, as to what

in fact was offered for sale. To avoid this evil, it is not suffi-cient that a particular individual should know, or a particular bidder or party to some former deed of the same land, but that every person invited to attend should have the certain means to know what is to be sold. The knowledge should be accessible to all, and at time of sale.

In the case of *Jackson* v. *De Lancy*, 13 Johns. 538, the chan-cellor says: " It ought to be received as a sound and settled principle, that the sheriff cannot sell any land on execution but such as the creditor can enable him to describe with reasonable certainty, so that people whom the law invites to such auction may be able to know where, and what, the property is they are about to purchase. Sales by process of law are under the pro-tection of the rules established for the common safety. I see no possible ground to hesitate concerning the policy or the jus-tice of the rule." In *Jackson* v. *Rosevelt*, 13 Johns. 97, Yates, J., who delivered the opinion of the court, says, that without some definite information as to the situation, there must generally be a sacrifice of property, either of the debtor or purchaser—in most cases the former. The officer ought to prevent such con-sequences. The least that can be required of him is, to locate the land so as to afford the means to the bystanders and bidders of informing themselves as to the value. In *Mason* v. *White*, 11 Barb. S. C. R. 173, the same policy of the law is recognized, (though the statute of New York requires something beyond the number of the lot to be given, if it had one,) and the court say, that the public policy requires a description by which the premises may be known and located ; that all persons may bid and become purchasers on equal terms, and that it may not be left to the declaration of the officer afterwards to determine what he meant to sell.

If this reference is to be treated as a reference to an unre-corded deed, the general policy of the law would require it to be rejected as insufficient.

But the reference here is to a deed recorded ; in effect, a refer-ence to the record for a particular description, namely, " to the aforesaid deeds and the records thereof." The case of *Gilman* v. *Thompson*, 11 Verm. 643, was one involving the levy on real

estate. The levy was made on certain land particularly described, " except one and a half acres thereof, sold by Tera Baker to Abel Whelden." The question was, as to the exception ; and whether it was reasonably certain. Upon this point the court say, per Colamer, J., the land excepted must, *primâ facie*, have been sold by deed ; and as all deeds are here recorded, that is sufficiently certain which may be so made by record. It is sufficient, until it appears that the record still leaves it uncertain. The language of the court implies, certainly, that unless it was to be treated as a reference to the record, it was quite insufficient. The case of *Jencks* v. *Ward & others*, 4 Met. 404, which was the case of a levy, implies the same. The description was, " a certain piece of land bought of Israel Jones, December 2, 1825.". Wilde, J., says, " A description by reference to deeds on record is sufficient ; " and referring to the case of *Boylston* v. *Carver*, 11 Mass. 514, in which the deed referred to was recorded, says, " whether it appeared in the *levy* in that case that the deed was on record is not certain from the report. But we are of opinion *that if it did so appear*, that there is no distinction between that case and this. The reference is to a deed in fact on record ; and the principle of the decision is the same. That is certain which may be made certain." The counsel in this case, upon diligent research, have been unable to find any case in which a reference out of the deed has been held sufficient, where it is simply to a sale or conveyance not recorded.

Looking at the general policy of the law, and regarding what is required for the protection of the rights of the judgment debtors and of the judgment creditors, it would be but a reasonable rule, that where the description is not contained in the levy itself, but certainty is to be imported into it by reference to something extrinsic, that that reference should be either to the record which is kept for the information of all persons and open at all time to all inquirers, or to facts upon the ground, capable of proof, and open to purchasers. Less than this cannot protect those rights, or furnish information to bidders sufficient to guide them in their estimate of the value of, and the price which they might reasonably pay for, the estate offered at the sale.

We think, therefore, that there was no error in the opinion now excepted to, but that the judge who tried the cause correctly held, that the levy was void. This being so, it follows necessarily that any deed founded thereon must also be void.

*Judgment for the defendant, for his costs.*